**CIVIL ACTION NO. 09-654-FB**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

_____

**PATTERSON-UTI DRILLING COMPANY, LLC**

*APPELLANT*,

**vs.**

**TXCO RESOURCES INC., et al.,**

*APPELLEE.*

_____

**On Appeal from the United States Bankruptcy Court**
**For the Western District of Texas**
**San Antonio Division**
**Case No. 09-51807-rbk**

_____

**APPELLANT BRIEF OF PATTERSON-UTI DRILLING COMPANY, LLC.**

_____

Pamela Gale Johnson
State Bar No. 10777700
Doug D'Arche
State Bar No. 00739582
1000 Louisiana, Suite 2000
Houston, Texas  77002
(713) 751-1600
(713) 751-1717 (Fax)
pjohnson@bakerlaw.com

ATTORNEYS FOR PATTERSON-UTI
DRILLING COMPANY, LLC

# TABLE OF CONTENTS

**Page**

Overview ...............................................................................................................3

Basis of Appellate Jurisdiction .............................................................................4

Standard of Review...............................................................................................4

Statement of Issues Presented for Review ..........................................................5

Statement of the Case and Proceedings Below ...................................................5

    Procedural Background...................................................................................5

    Statement of Facts ........................................................................................6

Argument ............................................................................................................11

    A.    Holders of Statutory M&M Liens are Entitled to Adequate Protection for the Debtors' Use of Cash Collateral ..................................................11

    B.    The Final Cash Collateral/DIP Order Fails to Provide Adequate Protection for the Holders of Statutory M&M Liens for the Priming Liens Granted to the DIP Agent and DIP Lender .........................................................................15

## TABLE OF AUTHORITIES

**Cases**

820 F.2d 700, 712 (5th Cir. 1987) ....................................................................................20

*Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.–Houston [1st Dist.] 1997, no writ)8, 12, 13

*Abella*, 945 S.W.2d at 851 ........................................................................................14

*Bandera Drilling Co. v. Lavino*, 824 S.W.2d 782, 784 (Tex. App.–Eastland 1992, no writ) ..........9

*Bandera Drilling Co., Inc. v. Lavino*, 824 S.W.2d 782 (Tex. App.–Eastland 1992, no writ) ..........8

*Cooter & Sell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....................................................4

*Energy-Agri v. Eisenman Chemical Co.*, 717 S.W.2d 651 (Tex. Civ. App.–Amarillo 1986, no writ) ..........8

*F.D.I.C. v. Mid-America, Inc.*, 83 B.R. 933 (Bankr. N.D. Tex. 1988) ....................................8

*In re First South Sav. Ass'n*, 820 F.2d 700 ....................................................................22

*In re First South Sav. Asso.,* 820 F.2d 700, 710 (5th Cir. 1987) ........................................17

*In re First South Sav. Asso.*, 820 F.2d 700, 710 (5th Cir. Tex. 1987) ..................................15

*In re Futures Equity L.L.C.*, 2001 Bankr. LEXIS 2219 at *15-16 (Bankr. N.D. Tex. 2001) ..........16

*In re Mosello*, 195 B.R. 277 (Bankr. S.D.N.Y. 1996) ........................................................21

*In re Mosello,* 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996) ................................................16

*In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) ................................................16

*In re Qualitech Steel Corp.*, 276 F.3d 245, 248 (7th Cir. 2001) ........................................21

*In re Seth Co.,* 281 B.R. 150, 153 (Bankr. D. Conn. 2002) ..............................................16

*In re Stoney Creek Technologies, LLC*, 364 B.R. at 890-891 ............................................16

*In re Stoney Creek Technologies, LLC*, 364, B.R. 882, 890 (Bankr. E.D. Pa. 2007) ..................16

*In re T.M. Sweeney & Sons LTL Servs., Inc.*, 131 B.R. 984 (Bankr. N.D. Ill. 1991) ..................16

*In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) ..................................17

*In re: Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998) ........................................................5

*In re: Cajun Electric Power Co-Op, Inc.*, 199 F.3d 349, 355 (5th Cir. 1997) ..........................5

*In re: Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996) ........................................4

*In re: Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ..................................9

*In re: Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ..................................4

*In re: Williams*, 337 F.3d 504, 508 (5th Cir. 2003) ..........................................................4

*Martin v. Production Credit Assoc. (In re Martin)*, 761 F.2d 472, 474 (8th Cir.1985) ................18

*Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 566 (3d Cir. 1994) ..........................................................................................16

*Swedeland Dev. Group*, 16 F.3d at 567 ........................................................................16

*Swedeland Dev. Group, Inc.,* 16 F.3d 552 ....................................................................22

*Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001) ......................................................4

*Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.–El Paso 1990, writ denied) ....................9

*Youngstown Sheet and Tube Co. v. Lucey Products Co.*, 403 F.2d 135 (5th Cir. 1968) ..........8, 9

**Statutes**

§ 364(d) ..........................................................................................................17

§364(d) ......................................................................................................17, 18

11 U.S.C. § 361 ............................................................................................16, 18

11 U.S.C. § 362(a) ..............................................................................................15

11 U.S.C. § 364 ....................................................................................................6

11 U.S.C. § 364(c)(1) ............................................................................................4

11 U.S.C. § 364(d) ..........................................................................................4, 16

11 U.S.C. § 546(b) ..........................................................................................8, 14

11 U.S.C. § 546(b)(2) ............................................................................................... 14

11 U.S.C. §§ 105(a), 361 and 363 .......................................................................... 6, 12

11 U.S.C. §361 ........................................................................................................ 18

28 U.S.C. § 158(a)(1) ............................................................................................... 5

503(b)(1) ................................................................................................................. 18

Tex. Civ. Prac. & Rem. Code § 64.001 ................................................................... 13

Tex. Prop. Code § 56.003 ......................................................................................... 9

Tex. Prop. Code §§ 56.041, 53.154 ......................................................................... 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **PATTERSON-UTI DRILLING** | § | **CIVIL ACTION No. 09-654-FB** |
| **COMPANY, LLC** | § | |
| | § | |
| **APPELLANT,** | § | **(On Appeal from the United States** |
| | § | **Bankruptcy Court for the Western** |
| **vs.** | § | **District of Texas, Case No. 09-51807-rbk)** |
| | § | |
| **TXCO RESOURCES INC., et al.** | § | |
| | § | |
| **APPELLEES** | § | |

<u>**BRIEF OF APPELLANT**</u>

TO THE HONORABLE FRED BIERY, UNITED STATES DISTRICT JUDGE:

<u>Overview</u>

1.      This is an appeal from a final order of the United States Bankruptcy Court for the
Western District of Texas, San Antonio Division (i) approving TXCO Resources Inc., et al's
("Debtors") (i) use of cash collateral; (ii) authorizing Debtors to incur post-petition secured
indebtedness up to the principal amount of $32 million (the "DIP Financing"); and (iii) granting
super priority liens pursuant to 11 U.S.C. § 364(c)(1) and priming liens under 11 U.S.C. § 364(d)
to the DIP Agent and the DIP Lenders (the "Cash Collateral/DIP Order").  Appellant Patterson-
UTI Drilling, LLC ("Patterson") is a trade lien creditor of the Debtors holding an M&M lien
pursuant to Texas law.   On June 15, 2009, The Bankruptcy Court entered the Cash
Collateral/DIP Order over the objection of Patterson and other trade lien creditors (the "M&M
Lien Creditors").  The legal reasoning and factual history of this case are well documented in the
Bankruptcy Court's decision.  The bases of this appeal are (i) the Cash Collateral/DIP Order
does not provide adequate protection for the interest of holders of M&M Lien Creditors for the
Debtors' use of cash collateral; and (ii) the Cash Collateral/DIP Order does not provide

adequate protection for the interest of M&M Lien Creditors for the priming liens which were granted to the DIP Agent and the DIP Lenders.

<u>Basis of Appellate Jurisdiction</u>

2.    This Court has jurisdiction under 28 U.S.C. § 158(a)(1), as this is an appeal from a final order of the United States Bankruptcy Court for the Western District of Texas.

<u>Standard of Review</u>

3.    There are three issues on appeal (the first two of which are related): (i) whether the Bankruptcy Court erred in finding that the production from oil and gas wells and joint interest billings associated with the oil and gas wells, located within the state of Texas, are not the cash collateral of the M&M Lien Creditors; (ii) whether the Bankruptcy Court failed to provide adequate protection of the interests of M&M Lien Creditors, for the Debtors' use of cash collateral; and (iii) whether the Bankruptcy Court failed to provide adequate protection of the interests of M&M Lien Creditors for the priming liens granted to the DIP Agent and DIP Lenders. The Bankruptcy Court's conclusion that statutory M&M Lien Creditors are not entitled to adequate protection for the Debtors' use of cash collateral as set forth in the final order [Docket No. 202, paragraph 8] is a conclusion of law and thus is reviewed on a *de novo* basis. *See In re: Williams*, 337 F.3d 504, 508 (5th Cir. 2003); and *In re: Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). The Bankruptcy Court's decision to provide M&M Lien Creditors with a limited adequate protection replacement lien in connection with the DIP Financing and priming liens granted to the DIP Agent and DIP Lenders is a matter within the discretion of the Bankruptcy Court and thus is reviewed under an abuse of discretion standard. *See In re: Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); and *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001). A Court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Sell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Under the abuse of discretion standard, this Court must have a definite and firm

conviction that the Bankruptcy Court committed a clear error of judgment in the conclusion it reached before reversal is proper.  *In re: Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998).  Any subsidiary findings by the Court are reviewed for "clear error."  *In re: Cajun Electric Power Co-Op, Inc.*, 199 F.3d 349, 355 (5th Cir. 1997).

<u>Statement of Issues Presented for Review</u>

4.     <u>Issue One</u>.  Whether the Court erred in finding that "the production from oil and gas wells and joint interest billings associated with oil and gas wells located within the state of Texas in each case shall not constitute the cash collateral of holders of M&M liens."  [*See* Docket No. 202, paragraph 8].

5.     <u>Issue Two</u>.  Whether the Court failed to provide adequate protection of the interest of holders of statutory mineral liens, including Patterson, for the Debtors' use of cash collateral as required under 11 U.S.C. §§ 105(a), 361 and 363.

6.     <u>Issue Three</u>.  Whether the Court failed to provide adequate protection of the interests of holders of statutory mineral liens, including Patterson, upon property of the estate on which senior liens were granted to the DIP Agent and DIP Lenders, as required under 11 U.S.C. § 364, in connection with the Court authorizing Debtors to incur post-petition secured indebtedness.  [*See* Docket No. 202, paragraph 20(e)].

<u>Statement of the Case and Proceedings Below</u>

*Procedural Background*

7.     The Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on May 17, 2009 (the "Petition Date"). Since the Petition Date, the Debtors have continued to operate and manage their business as debtors-in-possession.  The Debtors filed 20 "first-day" motions upon the commencement of the bankruptcy cases seeking certain emergency relief.  Included among the

first-day motions was the Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Incur Postpetition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Security Interests and Superpriority Claims; and (IV) Modifying the Automatic Stay (the "Cash Collateral/DIP Motion") [Docket No. 14].

8.      A number of creditors and parties-in-interest objected to the Cash Collateral/DIP Motion.  On May 19 and May 20, 2009, the Court conducted hearings on certain first-day motions, including the Cash Collateral/DIP Motion.  On May 22, 2009, the Court entered an interim order granting the Cash Collateral/DIP Motion and setting the final hearing for June 8, 2009 [Docket No. 68].

9.      On June 8 and June 9, 2009, the Bankruptcy Court conducted a final hearing on the Cash Collateral/DIP Motion.  On June 3, 2009, Patterson filed its objection to the Cash Collateral/DIP Motion [Docket No. 130].  Patterson appeared at the final hearing and objected to the Final Cash Collateral/DIP Order.

10.      On June 15, 2009, the Court entered the Final Cash Collateral/DIP Order [Docket No. 220], from which Patterson appeals.

*Statement of Facts*

11.      Description of the Debtors.  TXCO Resources, Inc. is a mid-sized publicly traded oil and gas exploration and production company headquartered in San Antonio, Texas.  The other Debtors companies are wholly-owned subsidiaries of TXCO Resources, Inc.  Each of the Debtors is engaged in one or more aspects of the exploration and production of oil and gas.

12.      Patterson lien claims.  Patterson is an oilfield service company operating in Texas and other states.  Patterson furnished goods, materials, supplies, machinery, equipment and/or labor under contract with one or more of the Debtors in connection with oil and gas operations conducted by the Debtors for which Patterson has not been paid.  The principal indebtedness in connection with the unpaid amounts due and owing on the Debtors' trade

account with Patterson is not less than $4,217,639.15, exclusive of contractual interest, attorneys' fees and costs. Patterson furnished materials and/or services in the following specific locations (collectively, the "Wells") and amount due with respect to each of the Wells is as follows:

     (a)    San Pedro Ranch Well #2, Dimmit County, Texas ($563,707.50);

     (b)    Shelly #2, Houston County, Texas ($427,342.05);

     (c)    Cage Ranch 737H, Maverick County, Texas ($661,914.38);

     (d)    Ferguson McKnight 1-281H, Well No. 8335-08, Zavala County, Texas ($759,556.25);

     (e)    Omeara-Webb 687#1 ($725,252.09); and

     (f)    C. Briscoe B 236H ($1,079,866.88).

13. On June 8, 2009, Patterson filed its Notice of Perfection of Liens under 11 U.S.C. § 546(b). [Docket No. 172].

14. As set forth in Patterson's objection [Docket No. 130] and Notice of Perfection of Liens [Docket No. 172], Patterson's claim is secured by (i) a statutory mineral lien against the Debtors' working interest in the Wells, enumerated above, and associated leases, property and rights; and (ii) a mineral subcontractor lien against the joint interest billings due and owing to the Debtors, as operator, on or after the date of Patterson's mineral subcontractor lien notice, and against the non-operating working interests.

15. <u>Nature and Scope of Lien Rights</u>. Under Texas law, Patterson's mineral liens attach to and encumber: (i) the subject well; (ii) the whole of such land or leasehold or lease for oil and gas purposes; (iii) the material, machinery and supplies furnished by the lien claimant; (iv) all other material, machinery and supplies used for mineral activities; (v) all personal property; (vi) all buildings; (vii) all appurtenances; (viii) all other oil, gas and water wells and pipelines located on the subject leases; (ix) the oil and gas produced from the subject leases; and (x) the proceeds from the sale thereof (collectively the "Subject Property"). *See* Tex. Prop.

Code § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.–Houston [1st Dist.] 1997, no writ).

16.    <u>Real Property Interests Encumbered</u>.    Patterson's mineral liens encumber the following interests in the Subject Property: (i) the interests of the contracting party (operator) and any mineral property owner on whose behalf such contracting party contracted as trustee, agent, receiver or mineral contractor; (ii) the interests of identified working interests owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interests of any working interest owners without a recorded assignment as of the applicable mineral lien inception date. *See* Tex. Prop Code § 56.001 *et seq*; *Bandera Drilling Co., Inc. v. Lavino*, 824 S.W.2d 782 (Tex. App.–Eastland 1992, no writ).

17.    <u>Joint Interest Billings</u>.    Patterson's mineral subcontractor liens attach to and encumber (i) any funds owed by the non-operating working interest owners to the Debtor as operator in connection with operations conducted on the Subject Property, as of the date of service of a mineral subcontractor lien notice and thereafter; and (ii) the working interest owned by the non-operating working interest owners.    Further, the holders of perfected mineral subcontractor liens have a first lien on the amounts owed by non-operating working interest owners for operations performed on their behalf by the operator and are entitled to be paid directly from the non-operating working interest owners in satisfaction of their respective mineral subcontractor liens.    *See F.D.I.C. v. Mid-America, Inc.*, 83 B.R. 933 (Bankr. N.D. Tex. 1988); *Youngstown Sheet and Tube Co. v. Lucey Products Co.*, 403 F.2d 135 (5th Cir. 1968); *Energy-Agri v. Eisenman Chemical Co.*, 717 S.W.2d 651 (Tex. Civ. App.–Amarillo 1986, no writ).    It is established law that:

> [Mineral Lien] Claimants who perfected their subcontractor's lien under the Texas Liens on Mineral Property Statute have first claim to the funds trapped by their notices.  The second claim to the proceeds of the . . . [joint interest billings] is in favor of the unpaid [Mineral Lien] Claimants since for their services the Non-Operator is paying.

*F.D.I.C. v. Mid-America Petroleum, Inc.*, 83 B.R. at 935.

18.    <u>Lien Inception</u>.  Once filed and perfected, Patterson's mineral liens incept and relate back to the date Patterson commenced furnishing labor and/or materials on the subject leases and/or units.  *See Youngstown Sheet & Tube Co. v. Lucey Products Co.,* 403 F.2d 135, 143 (5th Cir. 1968); *In re: Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986); *Bandera Drilling Co. v. Lavino*, 824 S.W.2d 782, 784 (Tex. App.–Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.–El Paso 1990, writ denied).

19.    <u>Patterson Objections to Cash Collateral/DIP Motion</u>.  Patterson objected to the Debtors' use of cash collateral on the grounds that the Debtors' Cash Collateral/DIP motion and proposed order provided no form of adequate protection for the use of cash collateral of statutory M&M Lien Creditors, which include proceeds of production from encumbered leaseholds and joint interest billings.  [*See* Docket No. 130].  Patterson further objected to the lack of adequate protection of the interests of the holders of statutory M&M liens which encumber the oil and gas properties upon which priming liens were granted in connection with the DIP Financing.  [*See* Docket No. 130].  In response, the Debtors argued (i) statutory M&M Lien Creditors are not entitled to adequate protection for the Debtors' use of cash collateral (i.e. proceeds of production and joint interest billings); and (ii) the holders of statutory M&M liens which are primed by the DIP Liens are adequately protected by the limited replacement lien granted in the Final Cash Collateral/DIP Order.

20.    <u>The Bankruptcy Court's ruling on adequate protection for use of cash collateral</u>. The Bankruptcy Court, at the urging of the Debtors, sidestepped the issue of whether the interests of statutory M&M Lien Creditors were being adequately protected for the Debtors' use of cash collateral, by making the following finding that the holders of statutory M&M liens were not entitled to adequate protection:

> The production from oil and gas wells and joint interest billings associated with oil and gas wells located within the state of Texas in each case, shall not constitute the Cash Collateral of holders of M&M liens.  This order does not address

whether the proceeds of production or joint interest billings, in either case from oil and gas wells outside the state of Texas constitute Cash Collateral under applicable non-bankruptcy law of such jurisdictions.

[*See* Docket No. 220, paragraph 8].   The reasoning stated by the Bankruptcy Court was as follows:

I will find that the proceeds [of production] are not cash collateral.  The *Abella* case is a little ambiguous about that.  But if it does hold they're cash collateral, I disagree with it.

. . .

If there was a receiver appointed, *Abella* applies.  And certainly the receiver can use the money from production to protect the lien claimants.  But that's not the situation here.  We don't have a receiver, the Debtor is in Chapter 11.  And, so, I don't believe that the liens, the M&M liens, attach to the proceeds of production.[1]

The Bankruptcy Court further declined to provide statutory M&M Lien Creditors with adequate

protection for the use of cash collateral at the final hearing as follows:

I think I've already decided the issue on the cash collateral, so we're not going to retrade that, either.[2]

21.     The Bankruptcy Court's ruling on adequate protection replacement liens for M&M

Lien Creditors.  The Final Cash Collateral/DIP Order provides as follows regarding the adequate

protection replacement liens granted to M&M Lien Creditors in connection with the DIP

Financing:

Additional Adequate Protection Liens.  To the extent of diminution in value of the collateral secured by the liens of holders of M&M Liens (other than Senior M&M Liens) that relate to pre-petition materials and/or services and that are valid and perfected under applicable non-bankruptcy law (such holders, the "Junior M&M Lien Claimants"), as adequate protection, the Junior M&M Lien Claimants are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statement or other agreements) a valid, perfected replacement security interest in and lien on certain specific property as more fully described on Exhibit "C" that is unencumbered by the liens of the Prepetition Lenders (the "M&M Replacement Collateral") in an amount equal to the amount of funds advanced pursuant to the DIP Loan Documents in an aggregate principal amount not to exceed $32,000,000 (the "M&M Adequate

---

[1] *See* May 20, 2009  hearing transcript, pages 225-26.
[2] *See* June 9, 2009 hearing transcript, page 213, ll 4-6.  The Bankruptcy Court did not provide a basis for the Court's conclusion that the holders of mineral subcontractor liens are not entitled to adequate protection for the Debtors' use of cash collateral in the form of joint interest billings.

Protection Liens"), and together with the Prepetition Lender Adequate Protection Liens, the "Adequate Protection Liens") to secure any such diminution in value of the collateral secured by such M&M Liens (exclusive of any Senior M&M Liens), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out Expenses, (iii) the Senior M&M Liens, (iv) the Senior Tax Liens, (v) any lien of the Prepetition Revolver Lenders and the Prepetition Term Loan Lenders (including, with limitation, the Prepetition Lender Adequate Protection Liens), and (vi) validly perfected liens and security interest as of the Petition Date of Anadarko E&P Company LP on or in the Collateral which is unencumbered by the liens of the Prepetition Lenders.

[*See* Docket No. 220, paragraph 20(e)].   The Court provided the following reasoning for the

Court's conclusion regarding the limited adequate protection replacement liens granted to M&M

Lien Creditors in connection with the DIP financing:

> I'm not going to give the M&M liens replacement liens on everything.  I'll give them on the property that's been offered by the Debtors. . . .  So, basically, the M&M liens, if they have senior liens, they have those.  They'll get liens on this property that you've [the Debtors] offered.  And if they need to ask for additional adequate protection, they can do it.[3]

Argument

A.   *Holders of Statutory M&M Liens are Entitled to Adequate Protection for the Debtors' Use of Cash Collateral.*

22.   Requirements for Use of Cash Collateral.   11 U.S.C. § 363 of the Bankruptcy

Code provides in relevant part:

> (c)(2)   The trustee may not use, sell, or lease cash collateral unless
>
> (A)   each entity that has an interest in such cash collateral consents; or
>
> (B)   the court after notice and a hearing authorizes such use, sale, or lease in accordance with provisions of this section.
>
> ***
>
> (e)   Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.
>
> ***

---

[3] *See* June 9, 2009 hearing transcript, page 213, ll 2-11.

     (p)     In any hearing under this section –

          (1)     the trustee has the burden of proof on the issue of adequate protection; and

          (2)     the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

23.     As set forth in Section 363, the requirement that adequate protection be provided for any party having an interest in property used, sold or leased (i.e. cash collateral) is mandatory. Further, the burden of proof on the issue of adequate protection is on the Debtor.

24.     Patterson's lien rights in this case are established by Patterson's Notice of Perfection of Liens under section 546(b) [Docket No. 172]. Further, the TXCO Resources' budget/cash flow projection [Docket No. 220; Exhibit B] reflects the projected receipts to the Debtors from (i) proceeds of production from the Debtors' oil and gas properties; and (ii) collection of joint interest billings from non-operating working interest owners.

25.     <u>Right to Appointment of a Receiver</u>. Under applicable non-bankruptcy law, Patterson has the right to commence a lien foreclosure action and have a receiver appointed to seize and preserve the proceeds of production from the Subject Property pending a judicial foreclosure. *See* Tex. Prop. Code §§ 56.041, 53.154; Tex. Civ. Prac. & Rem. Code § 64.001 *et seq.*; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.–Houston [1st Dist.] 1997, no writ).

26.     The reason statutory M&M Lien Creditors are afforded such rights under applicable non-bankruptcy law is articulated in the *Abella* opinion as follows:

Plaintiffs are the holders of statutory mechanics and materialman's liens on three oil and gas producing leases and wells. Defendants are working interest owners of the three oil and gas producing leases and wells. Plaintiffs filed suit for foreclosure of their M&M liens, and sought the appointment of a receiver to take possession of the proceeds of production attributable to the three wells prior to the foreclosure sale. The trial court in each case found that Plaintiffs had met their prima facie burden that they would likely prevail in their foreclosure actions, and appointed a receiver to collect the proceeds of production attributable to the three wells during the pendency of the litigation.

. . .

Plaintiffs provided labor and materials for the digging, drilling, completing, maintaining, operating and repairing of the three involved oil and gas wells. Plaintiff have not been paid in full for their services. Plaintiffs perfected their M&M liens against the oil and gas leases prior to Defendants' acquisition of interests in the leases. The main issue in this case is whether the value of Plaintiffs' M&M liens on oil and gas leases can be preserved pending the foreclosure proceedings.

. . .

There is no dispute that the value of Plaintiff's liens diminish as the wells are produced, and it is clear that the action to foreclose on Plaintiff's M&M Liens is an action by creditors to subject the oil and gas leases to the creditors' claims, as contemplated by Section 64.001(a) governing the appointment of receivers."

945 S.W.2d at 849-51. The Court of Appeals upheld the appointment of a receiver by the trial court concluding that the plaintiffs were entitled to relief sought as a matter of law. *Id.* at 851. The Court of Appeals also rejected the defendant working interest owners' argument that defendants had a superior right to the production from the oil and gas leases as holders of purchase money security interests under the Texas Business and Commerce Code. *Id.* The court further held that the title acquired by the defendants in the oil and gas leases was encumbered by the plaintiffs' lien claims, which incepted back to prior to the defendants' acquisition of working interests in the oil and gas leases. *Id.*

27. <u>Notice under Section 546(b)</u>. 11 U.S.C. § 546(b)(2) provides:

If –

(A) law described in paragraph 1 requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such action has not been commenced before the date of the filing of the petition; such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

28. As of the Petition Date, Patterson had not filed a lien foreclosure action nor secured the appointment of a receiver. However, by giving notice under 11 U.S.C. § 546(b), in lieu of commencement of a state court lien-foreclosure action and the appointment of a receiver

to seize and preserve the proceeds of production from the encumbered leasehold pending judicial foreclosure, Patterson perfected its interest in such proceeds of production in the same manner as if such lien foreclosure action had been commenced and a receiver appointed. Thus, Patterson was entitled to adequate protection of its interest in the proceeds of production and the Bankruptcy Court erred in concluding (i) that the M&M Lien Creditors do not have a protectable interest in the proceeds of production from oil and gas wells; and (ii) that the M&M Lien Creditors are not entitled to adequate protection for the Debtors' use of cash collateral.

29.    Moreover, the Bankruptcy Court's conclusion in paragraph 8 of the final order that proceeds of production are not part of the collateral of statutory M&M Lien Creditors is not dispositive of the issue of whether M&M Lien Creditors have an interest which is entitled to adequate protection.   A statutory M&M (mineral) lien encumbers – among other property and rights – the land, leasehold, oil or gas well, water well, oil or gas pipeline and its rights-of-way and the lease for oil and gas purposes for which the labor was performed or materials furnished. *See* Tex. Prop. Code § 56.003(a)(2).   "The oil and gas leases grant the right to extract and produce the oil and gas from the land."   *Abella*, 945 S.W.2d at 851.   As reflected in the Debtors' budget/cash flow projections, the Debtors propose to use the proceeds of production and joint interest billings to fund the Debtors' (i) operating expenses; (ii) restructuring expenses; (iii) professional fees; and (iv) certain capital expenditures during the pendency of the Bankruptcy Cases.   Holders of statutory M&M liens are receiving no adequate protection for the Debtors' use of the proceeds of production from encumbered oil and gas leases to fund the Debtors' reorganization efforts.   The security for such M&M liens is impaired by the draining of oil and gas from the leasehold upon which the liens attach under applicable state law.   Hydrocarbons are unique because they are not reproducible and the amount is finite.   The oil and gas leases are likewise unique because as production occurs, the value of the leases diminish and finally become worthless.   Thus, the value of the M&M liens diminish as the wells are produced. Further, but for the automatic stay imposed by 11 U.S.C. § 362(a), the holders of statutory M&M

liens would be entitled to commence state court lien-foreclosure actions and have a receiver appointed to seize and preserve the proceeds of production from the encumbered leaseholds pending judicial foreclosure.  Thus, statutory M&M Lien Creditors have an interest in such property which is entitled to adequate protection.[4]  Further, as set forth above, holders of perfected mineral subcontractor liens have a lien on all joint interest billings collected by the Debtor from the subject non-operating working interest owners, on or after the date of service of a mineral subcontractor lien notice.  Thus, statutory M&M Lien Creditors have an interest in the Debtors' joint interest billings which is likewise entitled to adequate protection.

B.    *The Final Cash Collateral/DIP Order Fails to Provide Adequate Protection for the Holders of Statutory M&M Liens for the Priming Liens Granted to the DIP Agent and DIP Lender.*

30.    <u>The burden is on the Debtors to demonstrate adequate protection</u>.  The debtor has the burden of proof as to the "adequacy" of adequate protection for existing liens when requesting credit secured by a lien on property of the estate that is senior to or equal with an existing lien on the property.  *See* 11 U.S.C. § 364(d)("In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.").  In *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. Tex. 1987), the Fifth Circuit noted that "[g]iven the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court

---

[4] 11 U.S.C. § 361 provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –

(1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2)    providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease of the value of such entity's interest in such property; or

(3)    granting such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected." Even when no objection is made, the burden of proving adequate protection still must be met. Otherwise, post-petition financing which is secured by a priming lien under §364(d) is not permitted. *See In re T.M. Sweeney & Sons LTL Servs., Inc.*, 131 B.R. 984 (Bankr. N.D. Ill. 1991) (noting that even though lien holder failed to object, the debtor was not relieved from demonstrating adequate protection, as section 364(d)(2) requires that the debtor establish adequate protection as a condition precedent).

31. "As a general principle, the Bankruptcy Code recognizes the primacy of pre-petition contractual liens and seeks to preserve the financial interests created thereby." *In re Mosello,* 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996). "This policy is recognized by *§ 364(d)* which permits the priming of an existing lien only as a 'last resort.'" *In re Stoney Creek Technologies, LLC*, 364, B.R. 882, 890 (Bankr. E.D. Pa. 2007), quoting *In re Qualitech Steel Corp.,* 276 F.3d 245, 248 (7th Cir. 2001); *see also In re Seth Co.,* 281 B.R. 150, 153 (Bankr. D. Conn. 2002)(noting that the "ability to prime is extraordinary").

32. As noted by the Bankruptcy Court for the Northern District of Texas, "[c]ourts approving § 364(d) loans with priming liens have required, among other things, a detailed objective fiscal analysis demonstrating adequate protection and the ability to repay the superpriority loan." *In re Futures Equity L.L.C.*, 2001 Bankr. LEXIS 2219 at *15-16 (Bankr. N.D. Tex. 2001), citing *In re Snowshoe Co, Inc.*, 789 F.2d 1085, 1089 (4th Cir. 1986); *Resolution Trust Corp. v. Swedeland Dev. Group* (*In re Swedeland Dev. Group*), 16 F.3d 552, 566 (3d Cir. 1994); *In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996)(holding that adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis).

33. The reasoning for this is clear: "Congress did not contemplate that a creditor could find its priority position eroded and as compensation be offered an opportunity to recoup dependent upon the success of a business with inherent risky prospects." *In re Stoney Creek Technologies, LLC*, 364 B.R. at 890-891; *Swedeland Dev. Group*, 16 F.3d at 567; *see also In re*

*Windsor Hotel, LLC,* 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) ("The authorization to prime an existing lien should not be read as authorization to increase substantially the risk of [existing creditors] in order to provide security for the new, post-petition lender").

34.    Here, the Debtors relied on valuations of certain undeveloped mineral properties based on unknown assumptions the result of which is that Junior M&M Lien Claimants are not provided with adequate protection for their pre-petition statutory liens.

35.    <u>M&M Lien Claimants are Entitled to Adequate Protection Under 11 U.S.C. § 361</u>. It is not disputed that the "Junior M&M Lien Claimants" [5] who are being primed by the liens granted to the DIP Agent and DIP Lenders – which may include Patterson[6] – are entitled to adequate protection under 11 U.S.C. § 361 as a result of the DIP financing authorized under § 364(d).  When adequate protection is required such adequate protection may be provided by: (i) a cash payment or periodic cash payments; (ii) an additional or replacement lien; or (iii) such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest." [7]  *See* 11 U.S.C. § 361.

36.    Section 361 is not an exhaustive list, rather, as noted by the Fifth Circuit, "[i]ts application is left to the [specific circumstances] of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."  *In re First South Sav. Assoc.,* 820 F.2d 700, 710 (5th Cir. 1987), quoting *In re Becker*

---

[5] Defined as "holders of M&M Liens (other than Senior M&M Liens) that relate to pre-petition materials and/or services and that are valid and perfected under applicable non-bankruptcy law…." Docket No. 220, paragraph 20(e).
[6]  While the Debtors have filed an adversary proceeding relating to (i) the properties which are encumbered by the pre-petition lenders' mortgages; and (ii) the properties of the pre-petition mortgages which are not encumbered by the pre-petition lenders' mortgages, the Bankruptcy Court has not made an adjudication nor has there been an adjudication of lien priority between the M&M lien claimants and pre-petition lenders.
[7]  "The last category being a 'catch all' which allows the bankruptcy court discretion to fashion adequate protection on a case by case basis." *In re Stoney Creek Technologies, LLC*, 364, B.R. 882,890 (Bankr. E.D. Pa. 2007); *In re Swedeland Development Group. Inc., 16 F.3d 552, 564 (3d Cir. 1994).*

*Indus.*, 58 Bankr. 725, 736 (Bankr.S.D.N.Y.1986); *see also Martin v. Production Credit Assoc. (In re Martin)*, 761 F.2d 472, 474 (8th Cir.1985).

37.    <u>M&M Lien Claimants should receive a "blanket" replacement lien</u>.  The adequate

protection offered by the Debtors and accepted by the Bankruptcy Court is inadequate because

the value assigned to the replacement collateral lacks certainty.  The adequate protection lien

provided for by the Bankruptcy Court's Final Order for Junior M&M Lien Claimants includes:

> "Certain property described in Exhibit "C"[8] that is unencumbered by the liens of
> the Prepetition Lenders …in an amount equal to the amount of funds advanced
> pursuant to the DIP Loan Documents in an aggregate principal amount not to
> exceed $32,000,000.00…subject and subordinate only to (i) the DIP Liens, (ii)
> the Carve-Out Expenses, (iii) the Senior M&M Liens, (iv) the Senior Tax Liens,
> (v) any lien of the Prepetition Revolver Lenders and the Prepetition Term Loan
> Lenders … and (vi) validly perfected liens and security interests as of the Petition
> Date of Anadarko E&P Company, LP on or in the Collateral which is
> unencumbered by the liens of the Prepetition Lenders." [Docket No. 220,
> paragraph 20(e)]

38.    However, as repeatedly pointed out by the objecting M&M Lien Creditors, the

M&M Replacement Collateral is inadequate, as the ultimate value of the M&M Replacement

Collateral is itself uncertain and the value of the seventh-position replacement lien granted to

the Junior M&M lien Claimants is likewise uncertain.[9]  As such, the Debtors should have been

required to grant additional security for Junior M&M Lien Claimants in the form of a blanket

replacement lien.  Here, because of the lack of evidence to support the Debtors' valuation of the

limited M&M Replacement Collateral, it is necessary for the Debtors to provide for a blanket

replacement lien on all assets of the Debtors to ensure adequate protection of the interests of

Junior M&M Lienholders.

---

[8] The M&M Replacement Collateral listed in Exhibit C to the Final Order (which is the same property listed
in Debtors' Hearing Exhibit 10) includes two leases: (i) Glass Ranch Lease; and (ii) M.P. Bean et al. and
Latham & McKnight , Ltd. Lease.  See Hearing Transcript June 9, 2009, p. 138, ll. 5-10.  The M&M
Replacement Collateral further includes four wells: (i) Glass Ranch 1-24H Well (Eagle Ford formation); (ii)
Glass Ranch 1-77H Well (Eagle Ford formation); (iii) M.P. Bean *et al.* and Latham & McKnight, Ltd.
Leases 1-128H Well (Austin Chalk formation); and (iv) M.P. Bean *et al.* and Latham & McKnight, Ltd.
Leases 2-533H Well (Austin Chalk formation).
[9] *See* June 9, 2009 hearing transcript, pages 185-213.

39. The primary problem from an evidentiary standpoint is that the record does not support the values the Debtors assigned to the M&M Replacement Collateral. Even though Mr. Grinsfelder—President of TXCO[10]—testified that the Debtors valued the M&M Replacement Collateral (Exhibit 10) between $32 and $40 Million,[11] the "Total Value" assigned for the subject properties was not determined by a reserve engineer.[12] And, the bulk of the values were not based on proven reserves at all;[13] rather they were "really just based on people bidding up value to whatever they can get the acreage for…."[14] Further, of the "Total Value" of $40,933,345 that was suggested by the Debtors at the hearing, $29,383,650 was attributed to the value of the M.P. Bean *et al.* and Latham & McKnight, Ltd. undeveloped lease acreage. But, Grinsfelder testified specifically that the M.P. Bean et al., and Latham & McKnight Leases were not included on any reserve report; instead the values assigned to those leases were merely "the company's view of the value of those leases."[15] Even still, he assigns the value per acre at somewhere between $250 and $750.00 per acre.[16] The broad range proffered by the Debtors for valuation purposes demonstrates its speculative nature. And, as these are undeveloped leases, the ultimate value of the subject leases is not determinable until production occurs (or does not occur, whichever the case may be). Albert Conly, the Debtors' chief restructuring officer,[17] further confirmed that the majority of the "Total Value" was derived from the Debtors' valuation of the undeveloped lease acreage, not PV-10 value.[18]

40. What's more, Mr. Grinsfelder testified that the Debtor only used one other comparable sale when making the valuation.[19] And, he readily admits that the Debtors' reserve

---

[10] June 8, 2009 hearing transcript, p. 112, ll. 10-14
[11] June 8, 2009 hearing transcript, p. 185, ll. 14-21.
[12] June 8, 2009 hearing transcript, p. 188, ll. 2-17.
[13] June 8, 2009 hearing transcript, p. 180, ll. 9-16 (Glass Wells included in the Maverick County reserve report)
[14] June 8, 2009 hearing transcript, p. 297, ll. 2-21.
[15] June 8, 2009 hearing transcript, p. 181, ll. 1-15
[16] June 8, 2009 hearing transcript, p.157, ll. 10-16
[17] June 9, 2009 hearing transcript, p. 65, ll. 3-8
[18] June 9, 2009 hearing transcript, p. 138, l. 25; p. 139, ll. 1-9
[19] June 8, 2009 hearing transcript, p. 190, ll. 4-22

reports reflected lower values for the subject wells.  In fact, the reserve report generated by DeGolyer & MacNaughton valued the two Glass wells at just over $1.2 million,[20] as opposed to the $4.7 million valuation assigned to the wells by the Debtors.[21]

41.    The Debtors also failed to present sufficient evidence regarding potential or existing liens on the properties pledged as replacement collateral for the Junior M&M Lienholders.  The Debtors' representative could not say what the number or amount of the potential or existing liens were for these properties.   In fact, he testified that the subject properties were selected as adequate protection collateral because "[w]e looked for properties that, to our knowledge, were not mortgaged, and that had the *potential* for little, if any, liens filed on those properties."[22] (emphasis added).  In the end, though, no actual investigation was made to determine existing liens; rather the selection process was based on the Debtors simply looking "at existing accounts payable associated with those particular leases, and . . .[the probability for liens] by that method."[23]

42.    The evidence presented by the Debtors here is not unlike other cases involving priming liens under 364(d) when the offered protection was found not to be adequate.  In *In re First South Sav. Asso.,* the adequate protection accepted by the bankruptcy court was "the additional value generated from the completion of the office building over and above the money spent to complete the same." 820 F.2d 700, 712 (5th Cir. 1987)   However, the Fifth Circuit noted that, "[t]he authorization of the $2 million super priority lien was based on projections, offered in testimony and exhibits, that pre-supposed the operation of the office building on a consolidated basis with the hotel and garage . . .[and] the numbers (i.e. value, income) offered by those called by the debtor to testify were … based on assumptions that [were] not supported

---

[20] June 8, 2009 hearing transcript, p. 187, ll. 16-20
[21] Debtors' hearing exhibit 10
[22] June 8, 2009 hearing transcript, p. 171, ll. 14-19 (emphasis added)
[23] June 8, 2009 hearing transcript, p. 171, ll. 20-24

in the record." 820 F.2d at 712. Thus, the Fifth Circuit reversed the bankruptcy court's decision to permit the post-petition financing.

43.    Here there were numerous assumptions made about the value of the M&M Replacement Collateral that raise concerns. For instance, (i) the existing liens on the properties is undetermined; and (ii) the value of the M&M Replacement Collateral is uncertain. Again, these values—in large part—are for *un*proved reserves, which the Debtors admit are inherently less certain than the value of proved reserves.[24] And, it's the *un*proved category from which the majority of the value assigned to the M&M Replacement Collateral arises.[25] For the Debtors to meet their burden before the Bankruptcy Court, additional information on the valuation of the M&M Replacement Collateral was needed to ensure M&M lien claimants were being adequately protected.

44.    Further, if the M&M Replacement Collateral does have a value of $32-$40 million, why was such collateral not used to secure the DIP Financing? The Debtor successfully argued to the Bankruptcy Court that the value of the M&M Replacement Collateral was sufficient to protect against any diminution in value for the Junior M&M Lien Claimants. If that is true, then the M&M Replacement Collateral should have been adequate to secure the DIP Financing without interfering with the existing lien rights of the M&M Lien Claimants. That certainly would have been the better approach if the collateral value is what the Debtor says it is. As courts have recognized, it is a more common practice to prime an existing lien only when the property has sufficient value to secure adequately both lenders. *See In re Mosello*, 195 B.R. 277 (Bankr. S.D.N.Y. 1996). Priming M&M Lien Claimants in favor of a post-petition DIP lender should require a strong showing that it is indeed a "last resort." *In re Qualitech Steel Corp.,* 276 F.3d 245, 248 (7th Cir. 2001) (noting that priming existing liens should be a "last resort."). When the effect of the new borrowing with a senior lien is merely to shift the risk of loss to the holder of an

---

[24] June 9, 2009 hearing transcript, p. 140, ll. 3-12
[25] June 9, 2009 hearing transcript, p. 140, ll. 13-25

existing lien, the request for authorization should be denied.  *Swedeland Dev. Group, Inc.,* 16 F.3d 552; *In re First South Sav. Ass'n*, 820 F.2d at 700.

45.    Here, the Debtors have passed the risk to the Junior M&M Lien Claimants when that risk should be borne by the new lender (if indeed the value of the property suggested for adequate protection is what the Debtors say it is).  Instead of granting liens on all of the Debtor's assets as urged by the M&M Lien Claimants, the Debtors selected two leases, the actual value of which is uncertain with no explanation of why the particular M&M Replacement Collateral was chosen in the first place,[26] and whether it really can secure the obligations owed.  Though the M&M Replacement Collateral might provide *some* protection, adequate protection can only be assured if a blanket replacement lien is granted upon all of the Debtors' assets.

### Conclusion

46.    The Bankruptcy Court erred in failing to recognize the interests of holders of statutory M&M liens in the proceeds of production from encumbered leases and joint interest billings.  The Bankruptcy Court likewise erred in failing to require the Debtors to provide adequate protection of the interests of holders of statutory M&M liens for the Debtors' use of cash collateral.  Finally, the Bankruptcy Court erred in not granting M&M lien claimants a "blanket" adequate protection replacement lien to compensate for any diminution in value of the pre-petition liens held by statutory M&M lien claimants for the priming liens granted to the DIP Agent and DIP Lenders.  Appellant Patterson respectfully requests that this Court reverse the portions of the Bankruptcy Court's final order denying M&M Lien Creditors the adequate protection to which such lien holders are entitled under applicable law and for such other and

---

[26] June 9, 2009 hearing transcript, p. 138, ll. 11-24: The Chief Restructuring Officer for TXCO testified he was not sure how TXCO came up with the two leases used for M&M Replacement Collateral, as opposed to other available leases.

further relief to which Appellant is justly entitled.

Dated: August 29, 2009

RESPECTFULLY SUBMITTED,


By: /s/Pamela Gale Johnson
    Pamela Gale Johnson
    State Bar No. 10777700
    Doug D'Arche
    State Bar No. 00739582
    1000 Louisiana, Suite 2000
    Houston, Texas  77002
    (713) 751-1600
    (713) 751-1717 (Fax)
    pjohnson@bakerlaw.com

ATTORNEYS FOR PATTERSON-UTI
DRILLING COMPANY, LLC


<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the above and foregoing has been served

upon the following counsel of record by United States mail, postage prepaid, on August 28,

2009 and by electronic transmission to all registered ECF users appearing in this case.

Deborah D. Williamson
Patrick L. Huffstickler
Lindsey D. Graham
Cox Smith Matthews Incorporated
112 E. Pecan, Suite 1800
San Antonio, TX  78205

/s/ Pamela Gale Johnson
Pamela Gale Johnson